**REESE LLP**
Michael R. Reese
*mreese@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile:  (212) 253-4272

**REESE LLP**
Charles D. Moore (to be admitted *pro hac vice*)
*cmoore@reesellp.com*
100 South 5th Street, Suite 1900
Minneapolis, Minnesota 55402
Telephone: (212) 643-0500
Facsimile:  (212) 253-4272

*Counsel for Plaintiff and the Proposed Class*

United States District Court
Southern District of New York

| | |
|---|---|
| Sonia Spates individually and on behalf of all others similarly situated<br><br>         Plaintiff<br><br>   - against -<br><br>Uber Technologies Inc.<br><br>         Defendant | Case No. 21-cv-10155<br><br>**CLASS ACTION COMPLAINT**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Sonia Spates ("Plaintiff" or "Ms. Spates"), on behalf of herself and all others similarly situated ("the Class"), brings this action against Uber Technologies Inc. ("Defendant") based upon Defendant's misrepresentations concerning its "Upfront Pricing" for Uber rides.

## **INTRODUCTION**

1. Defendant develops, markets and, facilitates the sale of shared rides through its well-known Uber ride-hailing app ("the App"). Starting in 2016 and continuing through to today, Defendant marketed its App as having Upfront Pricing - a feature Defendant claimed provided accuracy, transparency, simplicity, and certainty to riders by notifying them of the total cost of a ride prior to purchase. Unfortunately for consumers this was and is untrue, as Defendant routinely overcharged consumers.

2. This is a class action on behalf of New York consumers who used Defendant's App, and were charged more than the price they were quoted at the beginning of their ride (*i.e.* the "upfront price.").

3. In a classic bait and switch scheme, under the so-called Upfront Pricing, Defendant promises consumers one price to entice them to use Uber for transportation, to then surreptitiously charge the consumers a highly price later.

4. Defendant was able to accomplish this scheme because it had received the consumers' method of payment at or before the time Uber gave consumers the upfront price, but then charged the consumers' credit card or method of payment a higher price later on. Indeed, many consumers were overcharged on their credit cards and other payments methods and are unaware of it still to this day. Defendant's records, however, are able to show each and every one of the overcharges during the class period.

5. Defendant claims, "we strive to be clear about pricing, matching, and how our

technology affects riders and drivers,"[1] and Defendant claims Upfront Pricing "gives you the information you need to choose the ride that best meets your needs and budget."[2] This is false and deceptive as it does not.

6. Defendant's claim that "riders *no longer have to guess at prices*, they can *avoid surprises*, even when it's surging, and make better choices about which ride is right for their needs" is likewise false and misleading.[3]

7. Likewise, Defendant represents that Upfront Pricing is so simple it involves "no complicated math and no surprises . . . ."[4]

8. The deception is simple: the upfront price presented to consumers was false and misleading, as Defendant routinely charged consumers on their credit cards and other payment methods a higher amount than that presented to the consumer.

**PARTIES**

9. Plaintiff Spates is a resident of Bronx, New York. Plaintiff purchased Defendant's service in the Bronx during the Class Period. On multiple occasions, including in September 2021, before using the service she was quoted a price but was ultimately charged a higher price. Plaintiff relied on Defendants' false, misleading, and deceptive price in purchasing the service. Had Plaintiff known the truth – that the upfront price was false, misleading, and deceptive – Plaintiff would not have purchased the service. Plaintiff brings the claims below seeking damages, actual and statutory, as well as injunctive relief.

10. Defendant Uber Technologies, Inc., ("Uber") is incorporated in Delaware and has its principal place of business in San Francisco, California.

---

[1] https://marketplace.uber.com/principles.
[2] https://www.uber.com/us/en/ride/how-uber-works/upfront-pricing/.
[3] https://marketplace.uber.com/pricing/upfront-pricing.
[4] https://www.uber.com/newsroom/upfront-fares-no-math-and-no-surprises/.

11.    Plaintiff would purchase the service again if there were assurances that the Upfront Pricing was no longer misleading.

## JURISDICTION & VENUE

12.    Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2).

13.    Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

14.    This court has personal jurisdiction over Defendant because it conducts and transacts business within New York and contracts to supply and supplies services within New York.

15.    Venue is proper because Plaintiff and many class members reside in this District, Defendants do business in this District and in New York, and a substantial part of events and omissions giving rise to the claims occurred in this District.

## ADDITIONAL FACTUAL ALLEGATIONS APPLICABLE TO ALL COUNTS

16.    Defendant has consistently touted Upfront Pricing as a way for consumers to determine their total fares before purchasing rides, and Defendant has consistently represented to consumers that Upfront Pricing avoids surprises.

17.    This action is brought because Upfront Pricing often does not provide the total fare and consumers often are surprised (if they ever find out) that their ultimate fare differs from the Upfront Pricing fare they were quoted, resulting in them being charged an amount more than they were told when they agreed to the ride in the first place.

18.    When there is a difference between the fare as quoted through Upfront Pricing and the final fare, the final fare is always higher than the quoted fare; it is never lower.

**Uber's Pricing Methods**

19.    Beginning in the fall of 2016, Defendant started Upfront Pricing.

20. Uber's "Upfront Pricing" includes a base rate based on the time and distance for a trip, upcharges for busy times and areas, and, in some instances, a flat booking fee and/or tolls and charges, all of which is presented to the consumer before the ride is purchased.

21. In the normal course of business, Defendant maintains records regarding when and how each rider registers for the App.

22. In the normal course of its business, Defendant maintains records regarding the number of trips taken by riders using the App.

23. Defendant is able to identify and reproduce for each rider and each ride the "upfront" price that was quoted before the ride was purchased and the final, actual overcharge to each rider after each ride has ended (typically without the consumer's knowledge).

**Defendant's Representations Regarding Upfront Pricing**

24. Defendant placed the App into the stream of commerce and utilized Upfront Pricing to offer for sale and to sell shared rides to consumers including Plaintiff and Class members in New York.

25. Defendant placed the App into the stream of commerce and utilized Upfront Pricing with knowledge and intent that consumers would rely on Upfront Pricing to choose between competing ride-share opportunities and when using the App to purchase rides.

26. The App purports to show consumers the total cost of their ride in advance of booking the ride, which Defendant has made a feature of its marketing and advertising of itself and the App in order to gain competitive advantage in the marketplace.

27. Defendant's blog at uber.com confirms the materiality of Upfront Pricing to consumer decision-making based upon the "certainty" that Upfront Pricing purportedly provides:

> "Why upfront fares? To help create certainty[.] In cities where upfront fares have been introduced, data shows that *riders tend to request more because*

*they have more certainty about the price* – particularly during busy times when prices may be higher."[5] Likewise, the same blog page confirms, "Riders have more confidence when requesting trips with upfront fares. Data from other cities that have introduced upfront fares suggests that upfront fares result in more overall trip requests . . . . In cities that use upfront fares, *riders tend to request more trips than they did before it was introduced because of increased transparency – there's no math and no surprises*."[6]

28. Defendant has made numerous similar representations in addition to those identified above. Defendant's express and implied representations appear, among other places, on Defendant's web page and in other marketing materials distributed by Defendant to consumers.

    a. Defendant's Uber Marketplace web page acknowledges, in discussing the principles under which Uber operates, that "the work of connecting people to places and opportunities has real-word consequences, and that's a big responsibility" and that its "principled approach to marketplace design helps us live up to that responsibility"[7]

    b. On the same page Defendant claims it is "being upfront" and that it "believe[s] everyone should be equipped with the right information to make the best decisions for their needs;" hence Defendant "strive[s]to be clear about pricing, matching, and how [its] technology affects riders and drivers."

---

[5] https://www.uber.com/ur-PK/blog/introducing-upfront-pricing/ (emphasis added).
[6] *Id.* (emphasis added).
[7] https://marketplace.uber.com/principles.



  c. Defendant's Uber.com website advises consumers that "riders are shown the cost of their ride in advance" and that, as a result, "[r]iders feel confident taking trips when they have the information to make better decisions and drivers get more opportunities to earn."[8]

  d. According to the same web page, "Upfront prices are great for riders and drivers. Before booking a trip, riders are shown the price they'll pay at the end of the ride. Riders then have the confidence to request more trips, generating more demand for drivers."

  e. Similarly, "Because riders no longer have to guess at prices, they can avoid surprises, even when it's surging, and make better choices about which ride is right for their needs. In the time it took you to read this, we provided more than 2,000 upfront prices to riders, helping them get on their way."[9][10]

  f. Defendant's website advises riders they will "[k]now the cost before you ride, and pay the way you want."[11]

---

[8] https://marketplace.uber.com/pricing/upfront-pricing.
[9] *Id.*
[10] *Id.*
[11] https://www.uber.com/us/en/ride/how-uber-works/upfront-pricing/.

      g.    Under the heading "Uber's upfront pricing explained," Defendant's website promises that "[b]efore you request a ride, the app shows an upfront price to your destination every time—so you can sit back and enjoy the trip" while likening its "know before you go" pricing to buying an airplane ticket—"no complicated math and no surprises," as seen below.[12]

29.    Defendant's representations are not limited to its uber.com website. Defendant's devoted YouTube channel features a question and answer video with Product Lead for Pricing, Brandon Trew, that contains the following representations, which are consistent with those set out above:[13]

      a.    [YouTube Video]: "But why give the price upfront rather than at the end? Providing the upfront price removes all the guesswork and the risk."

      b.    [YouTube Video]: "By being upfront, we expand access, as riders with more information can make more confident choices and know with certainty what they're going to pay by the end."

      c.    [YouTube Video]: "Ensuring prices serve riders and drivers. That's what moves us."

30.    Likewise, Defendant's sponsored Uber Facebook page has delivered the same messaging. For example, Defendant advised consumers in late 2016 that they would "see the total cost of your ride so there are no unwelcome surprises" with Upfront Pricing (again using the "know before you go" slogan.[14]

---

[12] *Id.*
[13] https://www.youtube.com/watch?v=NCZ-vBC_a3E.
[14] https://www.facebook.com/uber/videos/1551756198197993/.

> **Uber**
> December 30, 2016
>
> Know before you go with upfront fares—available in most cities. Before you request an Uber, you'll see the total cost of your ride so there are no unwelcome surprises heading into the New Year. ubr.to/nye16

31. The representations (and concomitant omissions) cited above are consistent with other marketing claims made by Defendant over time and across different media.

32. These claims are incomplete, inaccurate, and are misleading in their particulars and on the whole because they lead reasonable consumers to believe that the Upfront Pricing that appears on the App is the price they will pay at the end of the ride and that is not always so.

33. Defendant intended for consumers to rely upon its representations concerning the accuracy, transparency, simplicity, and certainty of Upfront Pricing.

34. It would be reasonable for consumers to rely upon Defendant's representations concerning Upfront Pricing's accuracy, transparency, simplicity, and certainty when purchasing a shared ride.

35. Defendant repeatedly acknowledges that consumers rely upon its Upfront Pricing scheme when it touts the fact that Upfront Pricing leads to more ride purchases by consumers based upon its apparent accuracy, transparency, simplicity, and certainty.

36. The "upfront" price that appears in the App is not effectively qualified in any fashion and is presented as the fare a reasonable consumer may expect to pay at the ride's conclusion. The information that is available is inconspicuous, incomplete, and misleading. The screenshots below are illustrative of what consumers typically encounter in the App.



a. **Image A** depicts the user interface in the App once the rider has identified her pickup point and destination. The price in the superimposed yellow box is the "upfront" price. Consumers can pick between several options – UberX (for a typical car); UberXL (for a larger car) or Black (for a luxury car). Once the consumers picks one of the options, that type of ride and the price are confirmed. Here, if the consumer selected Uber X and accepted the ride based on the "upfront" fare, that fare should be $41.43. In reality, Uber often charged the consumer more once the ride was completed. Most consumers did not realize this, as the higher charge was made directly to the consumer's credit card or other form of payment, without disclosing beforehand the higher charge.

9

37. Despite Defendant's consistent marketing focus on pricing transparency and simplicity, receipts of actual fares paid by consumers demonstrate that Defendant routinely overcharges consumers amounts significantly higher than the Upfront Price stated to consumers.

38. In fact, fares paid by consumers significantly differed from the Upfront Price despite no changes being made by the consumers to the original estimated length, duration, or route and/or when changes to the original estimated length, duration, or route were negligible or insignificant.

39. Defendant's representations concerning Upfront Pricing's accuracy, transparency, simplicity, and certainty were made with the intent to generate sales of shared rides through the App and website, and in fact they did so.

40. Defendant's representations are inaccurate and misleading and contain material omissions insofar as Defendant expressly or impliedly claims:

   a. that Upfront Pricing accurately represents the cost to the consumer of any or every Uber ride;

   b. that the fare that a consumer pays at the end of a trip invariably will be the fare quoted before purchasing the trip;

   c. that a consumer may rely on Upfront Pricing to provide an accurate representation of the fare for a trip when deciding whether to purchase a ride;

   d. that Upfront Pricing provides transparency and avoids surprises by informing consumers of the cost of a trip before purchase;

   e. that Defendant provides all of the information necessary to allow consumers to determine, fare-wise, whether to purchase a given Uber ride and/or

        whether to use another rideshare company or another travel option, e.g., a taxi; or

    f.    that Upfront Pricing is accurate, transparent, simple and/or certain.

41.    In short, Defendant's advertising and marketing represents to the public that Upfront Pricing provides clarity and transparency to consumers, but consumers are being continuously misled about the price of a given trip prior to purchase.

42.    As a direct and proximate result of Defendant's consistent and pervasive misrepresentations regarding Upfront Pricing, Plaintiff and the Class have suffered damages.

43.    Uber's "upfront" price represents the actual value of each given ride to Plaintiff and to other consumers.

44.    That representation was false, however, in each instance where the final fare exceeded the "upfront" price.

45.    Accordingly, in each such respective instance, Plaintiff and the Class did not realize the benefit of the bargain and their expectations were not met.

46.    In each such respective instance, Plaintiff and the Class paid more than the market value represented by the price bargained for. Plaintiff and the Class bargained with Uber on a particular market value for a given ride. But in each respective instance where the final fare exceeded the "upfront" price, Plaintiff and the Class paid an amount higher than reflected in the market price to which they and Defendant had agreed.

47.    Absent Defendant's misrepresentations and omissions, Plaintiff and the Class would have paid less for rides, i.e., less for Defendant's services, than they actually paid.

48.    The damages Plaintiff and the Class have suffered include but are not limited to the greater of (a) the difference between the quoted "upfront" price and the final fare for all rides in

which the final fare exceeded the "upfront" price or (b) statutory damages of $550 per ride pursuant to New York General Business law sections 349 and 350.

49. Defendant possesses data sufficient to ascertain the identity of each affected consumer and each such overcharge.

## CLASS ALLEGATIONS

50. The class is defined as of all consumers who purchased a ride through Uber originating anywhere within New York using Upfront Pricing through the Uber App since January 1, 2016 to the date of the entry of final judgment against Defendant. ("Class").

51. A class action is superior to other methods for fair and efficient adjudication.

52. The class is so numerous that joinder of all members, even if permitted, is impracticable, as there are likely hundreds of thousands of members.

53. Common questions of law or fact predominate and include:

   a. whether the Upfront Price was likely to mislead to reasonable consumers;

   b. whether Defendant charged higher prices than the Upfront Price represented to consumers;

   c. what representations Defendant has made regarding Upfront Pricing;

   d. whether and when Upfront Pricing is in fact the actual fare paid by consumers;

   e. whether and to what extent Plaintiff and the Class suffered direct losses or damages;

   f. whether Plaintiff and the Class are entitled to actual or statutory damages;

and

g. whether Plaintiff and the Class are entitled to injunctive relief, restitution, or other forms of equitable relief.

54. Plaintiff's claims and the basis for relief are typical to other members because all were subjected to the same representations.

55. Plaintiff is an adequate representative because her interests do not conflict with other members.

56. No individual inquiry is necessary because the focus is only on Defendant's practices and the class is definable and ascertainable.

57. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest.

58. Plaintiff's counsel are competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

59. Plaintiff seeks class-wide injunctive relief because Defendant's deceptive practices continue.

**CAUSES OF ACTION**
**FIRST CAUSE OF ACTION**
**VIOLATION OF NEW YORK GBL § 349**
**(On Behalf of Plaintiff and Other Class Members)**

60. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

61. New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

62. The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive

13

acts and practices in violation of GBL § 349, and as such, Plaintiff and the other Class Members seek monetary damages and the entry of preliminary and permanent injunctive relief against Defendant, enjoining it from inaccurately describing, marketing, and promoting the Upfront Pricing.

63. Defendant misleadingly, inaccurately, and deceptively represents Upfront Pricing to consumers.

64. Defendant's improper consumer-oriented conduct is misleading in a material way in that it, *inter alia*, induced Plaintiff and other Class Members to purchase and/or pay a premium for Defendant's services and to use the services when they otherwise would not have.

65. Defendant made its untrue or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

66. Plaintiff and other Class Members have been injured inasmuch as they were overcharged. Accordingly, Plaintiff and other Class Members paid more than what they bargained or received.

67. Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and other members of the Class have been damaged thereby.

68. As a result of Defendant's recurring deceptive acts and practices, Plaintiff and other Class Members are entitled to monetary and compensatory damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs. This includes actual damages under GBL § 349, as well as statutory damages of $50 per ride pursuant to GBL § 349.

## SECOND CAUSE OF ACTION
## VIOLATION OF NEW YORK GBL § 350

**(On Behalf of Plaintiff and Other Class Members)**

69. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

70. N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.

71. N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

72. Defendant's representations contain untrue and materially misleading statements concerning Defendant's services inasmuch as they misrepresent the Upfront Pricing.

73. Plaintiff and other Class Members have been injured inasmuch as they relied upon the Upfront Pricing and were overcharged for the services. Accordingly, Plaintiff and other Class Members paid more than what they bargained or received.

74. Defendant's Upfront Pricing induced the Plaintiff and Class Members to buy Defendant's services.

75. Defendant made the material misrepresentations described in this Complaint on Defendant's App.

76. Defendant's material misrepresentations were substantially uniform in content,

15

presentation, and impact upon consumers at large. Moreover, all consumers purchasing the services were and continue to be exposed to Defendant's material misrepresentations.

77. As a result of Defendant's recurring, acts and practices in violation of GBL § 350, Plaintiff and Class Members are entitled to monetary and compensatory damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs as well as statutory damages of $500 per service purchased.

## THIRD CAUSE OF ACTION
## UNJUST ENRICHMENT
**(On Behalf of Plaintiff and Other Class Members)**

78. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

79. Plaintiff pleads this claim in the alternative.

80. As a result of Defendant's deceptive, fraudulent, and misleading labeling, advertising, marketing, and sales of the services, Defendant was enriched, at the expense of Plaintiff and the other Class members through the payment of the purchase price for Defendant's services.

81. Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits that it received from Plaintiff and the other members in light of the fact that the services purchased by Plaintiff and the other Class members were not what Defendant purported them to be. Thus, it would be unjust or inequitable for Defendant to retain the benefit without restitution to Plaintiff and the other Class members for the monies paid to Defendant for such services.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the members of the Class, respectfully requests the Court to enter an Order:

A. certifying the proposed Class under Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3), as set forth above;

B. declaring that Defendant is financially responsible for notifying the Class members of the pendency of this suit;

C. declaring that Defendant has committed the violations of law alleged herein;

D. providing for any and all injunctive relief the Court deems appropriate;

E. awarding monetary damages, including but not limited to any compensatory, incidental, or consequential damages in an amount that the Court or jury will determine, in accordance with applicable law;

F. awarding statutory damages;

G. providing for any and all equitable monetary relief the Court deems appropriate;

H. awarding punitive or exemplary damages in accordance with proof and in an amount consistent with applicable precedent;

I. awarding Plaintiff her reasonable costs and expenses of suit, including attorneys' fees;

J. awarding pre- and post-judgment interest to the extent the law allows; and

K. providing such further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a jury trial on all issues.

Date: November 30, 2021               Respectfully submitted

*/s/ draft*
Michael R. Reese
*mreese@reesellp.com*
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile:  (212) 253-4272

**REESE LLP**
Charles D. Moore (to be admitted *pro hac vice*)
*cmoore@reesellp.com*
100 South 5th Street, Suite 1900
Minneapolis, Minnesota 55402
Telephone: (212) 643-0500
Facsimile:  (212) 253-4272

*Counsel for Plaintiff and the Classes*