UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x

SONIA SPATES, INDIVIDUALLY AND ON
BEHALF OF ALL OTHERS SIMILARLY
SITUATED,

                 Plaintiffs,

         -against-

UBER TECHNOLOGIES, INC.,

                Defendant.

:
:
:
:
:
:
:
:
:
:
:
:
:
:

Index No. 1:21-cv-10155

Hon. Andrew L. Carter, Jr

---------------------------------------------------------------- x

## UBER TECHNOLOGIES, INC.'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO COMPEL ARBITRATION

MORRISON & FOERSTER LLP

Claudia M. Vetesi
Tiffany Cheung
425 Market Street
San Francisco, CA 94105
Tel: (415) 268-7000
CVetesi@mofo.com
TCheung@mofo.com

Adam J. Hunt
250 West 55th Street
New York, New York 10019
Tel: (212) 468-8000
AHunt@mofo.com

*Attorneys for Defendant*
*Uber Technologies, Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................. 1

STATEMENT OF FACTS ................................................................................................. 3

    A.    Plaintiff Agreed to Uber's 2017 Terms of Use When She Registered Her Account. ................................................................................................................ 3

    B.    Uber's 2017 Terms Include an Arbitration Provision With a Delegation Clause and a Provision That Permits Uber to Update its Terms ....................................... 4

    C.    Uber Properly Updated its Terms of Use and Plaintiff Did Not Reject the Changes. .................................................................................................................. 5

    D.    Plaintiff Ignored The Arbitration Provisions and Filed Suit. ................................. 6

LEGAL STANDARD ........................................................................................................ 7

ARGUMENT .................................................................................................................... 8

I.    PLAINTIFF MUST INDIVIDUALLY ARBITRATE HER CLAIMS. ............................. 8

    A.    Plaintiff Agreed To Be Bound by Uber's Terms, Which Govern Plaintiff's Claims. .................................................................................................................. 8

    B.    The FAA Applies To The Arbitration Provisions Contained in Uber's Terms. ..... 9

    C.    New York Law Governs Any Dispute Concerning The Enforceability Or Scope Of The Arbitration Provision Contained in Uber's Terms. ................................... 10

    D.    Under The FAA And New York Law, the Arbitration Provision Contained in Uber's Terms of Use Is Valid And Must Be Enforced. ........................................ 11

        1.    The Parties' Agreement requires the arbitrator to decide all issues of arbitrability ...................................................................................................... 11

        2.    Plaintiff's claims are subject to arbitration because the "gateway" issues have been satisfied. ...................................................................................... 15

            a.    Plaintiff entered into valid Arbitration Agreement(s). ................. 15

            b.    Plaintiff's claims fall squarely within the scope of Uber's Terms of Use ........................................................................................................ 16

    E.    Plaintiff Must Arbitrate Her Claims on an Individual Basis. ............................... 18

II.    THIS ACTION SHOULD BE DISMISSED OR STAYED PENDING THE COMPLETION OF INDIVIDUAL ARBITRATION. ................................................... 18

CONCLUSION ............................................................................................................... 19

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Aleksanian v. Uber Technologies, Inc.*,
    524 F. Supp. 3d 251 (S.D.N.Y. 2021) (Carter, J.) ....................................................2, 13, 14, 19

*Allied-Bruce Terminix Cos. v. Dobson*,
    513 U.S. 265 (1995) ............................................................................................................9

*Am. Express Co. v. Italian Colors Rest.*,
    570 U.S. 228 (2013) ........................................................................................................7, 11

*In re Am. Express Fin. Advisors Sec. Litig.*,
    672 F.3d 113 (2d Cir. 2011) ..............................................................................................15

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011) ..........................................................................................................10

*Buckeye Check Cashing, Inc. v. Cardegna*,
    546 U.S. 440 (2006) ............................................................................................................9

*Camilo v. Lyft, Inc.*,
    384 F. Supp. 3d 435 (S.D.N.Y. 2019) (Carter, J.) ..............................................................10

*Citizens Bank v. Alafabco, Inc.*,
    539 U.S. 52 (2003) ............................................................................................................10

*Contec Corp. v. Remote Sol., Co.*,
    398 F.3d 205 (2d Cir. 2005) ..............................................................................................12

*Cordas v. Uber Techs., Inc.*,
    228 F. Supp. 3d 985 (N.D. Cal. 2017) ..............................................................................10

*Darcheal Reed v. Uber Techs., Inc.*,
    No. 22-cv-00596 (N.D. Cal. Jan. 28, 2022) (attached as Ex. D to Vetesti Decl.)................2, 6

*Dean Witter Reynolds, Inc v. Byrd*,
    470 U.S. 213 (1985) ..........................................................................................................18

*DIRECTV, Inc. v. Imburgia*,
    577 U.S. 47 (2015) ............................................................................................................18

*Epic Sys. Corp. v. Lewis*,
    138 S. Ct. 1612 (2018) ......................................................................................................18

*Feld v. Uber Techs., Inc.*,
    No. 19STCV26766 (Cal. Super. Ct., L.A. Cty., Apr. 17, 2020) (attached as
    Ex. A to Vetesti Decl.) ........................................................................................14

*Fteja v. Facebook, Inc.*,
    841 F. Supp. 2d 829 (S.D.N.Y. 2012) ..................................................................16

*Guan v. Uber Techs., Inc.*,
    236 F. Supp. 3d 711 (E.D.N.Y. 2017) ....................................................3, 8, 11, 14

*Gunn v. Uber Techs., Inc.*,
    No. 16-CV-1668, 2017 WL 386816 (S.D. Ind. Jan. 27, 2017)...............................14

*Guyden v. Aetna, Inc.*,
    544 F.3d 376 (2d Cir. 2008)..................................................................................19

*Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*,
    246 F.3d 219 (2d Cir. 2001)..................................................................................12

*Hines v. Overstock.com, Inc.*,
    380 Fed. Appx. 22 (2d Cir. 2010) .........................................................................15

*Horton v. Dow Jones & Co., Inc.*,
    804 F. App'x 81 (2d Cir. 2020) ............................................................................14

*Kindred Nursing Ctrs. Ltd. P'ship v. Clark*,
    137 S. Ct. 1421 (2017)............................................................................................7

*Klein v. ATP Flight Sch., LLP*,
    No. 14-CV-1522 JFB GRB, 2014 WL 3013294 (E.D.N.Y. July 3, 2014) ............10

*Lee v. Uber Techs., Inc.*,
    208 F. Supp. 3d 886 (N.D. Ill. 2016) ....................................................................14

*Man Fong Wong v. 1st Disc. Brokerage, Inc.*,
    No. 10 CV 1487 ENV, 2011 WL 1298857 (E.D.N.Y. Jan. 6, 2011)......................12

*Matthews v. Uber Techs., Inc.*,
    No. CGC-20-584582 (Cal. Super. Ct., S.F. Cty., Nov. 18, 2020) (attached as
    Ex. C to Vetesi Decl.) ...................................................................................2, 6, 14

*McGill v. Citibank, N.A.*,
    2 Cal. 5th 945 (2017) ............................................................................................14

*Merrick v. UnitedHealth Grp. Inc.*,
    127 F. Supp. 3d 138 (S.D.N.Y. 2015)...................................................................19

*Micheli & Shel, LLC v. Grubhub Inc.*,
   No. 21-CV-4995 (JMF), 2022 WL 622828 (S.D.N.Y. Mar. 1, 2022) ..............................11, 18

*Monarch Consulting, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
   26 N.Y.3d 659 (N.Y. 2016) ...................................................................................................13

*Mortensen v. Bresnan Commc'ns, LLC*,
   722 F.3d 1151 ..........................................................................................................................7

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983)...............................................................................................................18, 19

*Nicosia v. Amazon.com, Inc.*,
   No. 14 CV 4513 (SLT)(LB), 2017 WL 10111078 (E.D.N.Y. Aug. 18, 2017)........................8

*O'Callaghan v. Uber Corp. of Cal.*,
   No. 17 Civ. 2094 (ER), 2018 WL 3302179 (S.D.N.Y. July 3, 2018)....................................15

*PaineWebber Inc. v. Bybyk*,
   81 F.3d 1193 (2d Cir. 1996)............................................................................................12, 13

*Peng v. Uber Techs., Inc.*,
   237 F. Supp. 3d 36 (E.D.N.Y. 2017) .....................................................................................14

*Rent-A-Center, West, Inc. v. Jackson*,
   561 U.S. 63 (2010)..................................................................................................................12

*Sena v. Uber Techs. Inc*,
   No. CV-15-02418-PHX-DLR, 2016 WL 1376445 (D. Ariz. Apr. 7, 2016)...........................14

*Southland Corp. v. Keating*,
   465 U.S. 1 (1984)......................................................................................................................7

*Spinelli v. Nat'l Football League*,
   96 F. Supp. 3d 81 (S.D.N.Y. 2015)........................................................................................17

*Starke v. Gilt Groupe, Inc.*,
   No. 13 Civ. 5497(LLS), 2014 WL 1652225 (S.D.N.Y. Apr. 24, 2014) ...........................15, 16

*Suarez v. Uber Techs., Inc.*,
   No. 8:16-CV-166, 2016 WL 2348706 (M.D. Fla. May 4, 2016)............................................14

*Sutherland v. Ernst & Young LLP*,
   726 F.3d 290 (2d Cir. 2013)..............................................................................................14, 18

*Totalplan Corp. of Am. v. Colborne*,
   14 F.3d 824 (2d Cir. 1994)......................................................................................................11

*Varon v. Uber Techs., Inc.*,
    No. 15-CV-3650, 2016 WL 1752835 (D. Md. May 3, 2016)...................................................14

*Whitt v. Prosper Funding LLC*,
    No. 15-cv-136, 2015 WL 4254062 (S.D.N.Y. July 14, 2015)...........................................15, 16

**Statutes**

9 U.S.C. § 1 ......................................................................................................................................9

9 U.S.C. § 2 ......................................................................................................................................9

## <u>INTRODUCTION</u>

Plaintiff filed this putative class action contending that Uber Technologies, Inc. ("Uber") overcharged her for rides that she requested through Uber's smartphone application ("the Uber App").  But Plaintiff's Complaint against Uber does not belong in this forum because when Plaintiff signed up to ride using the Uber App, she entered into a binding arbitration agreement that covers her claims in this case and bars her from pursuing a class action.  Moreover, any challenge to arbitrability must be decided in the first instance by the arbitrator pursuant to a delegation clause in the arbitration agreement.

In order to use Uber's platform, Plaintiff entered into a contract with Uber that specifies the terms and conditions governing the parties' relationship.  The Terms of Use to which Plaintiff agreed in 2018 ("the 2017 Terms") included a clear and conspicuous arbitration provision (the "Arbitration Provision") where Plaintiff: (1) agreed to arbitrate "any dispute, claim or controversy arising out of or relating to . . . these Terms or the existence, breach, termination, enforcement, interpretation or validity thereof . . ." or Plaintiff's "access to or use" of Uber's services "at any time"; and (2) waived resolution of any claims in "a class, collective, consolidated, or representative proceeding."  (Fishman Decl.,[1] Ex. B.)  Moreover, the 2017 Terms specified that the arbitrator was to "be responsible for determining all threshold arbitrability issues, including issues relating to whether the Terms are unconscionable or illusory and any defense to arbitration, including waiver, delay, laches, or estoppel."  (*Id.* Ex. B at 2.) Consistent with its 2017 Terms, Uber updated its Terms of Use several times over the course of the years Plaintiff used the Uber App, including in July 2021 ("the July 2021 Terms"), but the

---

[1] Declaration of Daniel Fishman In Support of Uber Technologies, Inc.'s Motion to Compel Arbitration, filed concurrently.

Arbitration Provisions remained materially unchanged each time.  (*Id.*, Exs. C-D.)  Thus, this dispute belongs in arbitration.

Courts within this District and elsewhere have held the delegation clauses like those contained in Uber's Terms of Use, including in the July 2021 Terms—which were in effect when Plaintiff filed this Complaint and allegedly took the one ride mentioned in the Complaint—valid and enforceable and have granted motions to compel arbitration under nearly identical circumstances.  In fact, this is one of three complaints filed against Uber by Plaintiff's counsel making copycat claims regarding alleged rider overcharges.  Plaintiff's Complaint is almost entirely recycled from a 2020 complaint that Plaintiff's counsel filed against Uber in California state court, making the *same* factual allegations and seeking to avoid the *same* Terms of Use that Plaintiff agreed to in this case.  (Vetesi Decl.,[2] Ex. B.)  There, the court ordered those claims to arbitration.  (*See id.*, Ex. C (Order Granting Motion to Compel, *Matthews v. Uber Techs., Inc.*, No. CGC-20-584582 (Cal. Super. Ct., S.F. Cty., Nov. 18, 2020)).)  And Plaintiff's Complaint is strikingly similar to a complaint that Plaintiff's counsel filed against Uber in the Northern District of California less than two months after this Complaint was filed.  (*See id.*, Ex. D (Compl., *Darcheal Reed v. Uber Techs., Inc.*, No. 22-cv-00596 (N.D. Cal. Jan. 28, 2022)).)  While Plaintiff's counsel openly forum shops, Uber and this Court are now required to expend resources relitigating the same issues, which should be compelled to arbitration here just as in California.

Indeed, in *Aleksanian v. Uber Technologies, Inc.*, 524 F. Supp. 3d 251, 263-64 (S.D.N.Y. 2021), this Court granted Uber's Motion to Compel Arbitration where Uber's agreement with drivers delegated to the arbitrator all "disputes arising out of or related to this Agreement and

---

[2] Declaration of Claudia M. Vetesi In Support of Uber Technologies, Inc.'s Motion to Compel Arbitration, filed concurrently.

disputes arising out of or related to [Plaintiffs'] relationship with Uber"—language that is nearly identical to the delegation provision contained in the July 2021 Terms.  *See also Guan v. Uber Techs., Inc.*, 236 F. Supp. 3d 711, 728 (E.D.N.Y. 2017) (delegation clause's language that an arbitrator will decide "disputes arising out of or relating to interpretation or application of this Arbitration Provision" clearly and unmistakably delegated the gateway issues to the arbitrator).  There is no reason for this Court to reach a different conclusion.

For the reasons set forth below, Uber respectfully requests that the Court grant its Motion, compel arbitration of Plaintiff's claims, and either dismiss or stay this action pending the outcome of the arbitration.

## STATEMENT OF FACTS

### A.   Plaintiff Agreed to Uber's 2017 Terms of Use When She Registered Her Account.

Uber's technology enables riders to request rides from drivers via a smartphone application known as the "Uber App." (Fishman Decl. ¶ 3.)  But before riders may request rides and pay their drivers for those rides through the Uber App, they must create an Uber account and agree to Uber's Terms of Use. (*Id.* ¶¶ 5, 9.)

Plaintiff registered for an Uber rider account on August 2, 2018 via Uber's website.  (*Id.* ¶ 6.)  At that time, the website registration page required a user to input their name, email address, password (to be selected by the user), mobile phone number and promotion code (if any) into a form on a single webpage.  (*Id.* ¶ 8, Ex. A.)  After completing these fields, the user could create an account by clicking the "SIGN UP" button at the bottom of the webpage.  (*Id.* ¶ 8, Ex. A.)

Right below the "SIGN UP" button there was a simple and plain disclosure that informed users—including Plaintiff—that by clicking below they were "agree[ing] to the Uber Terms of

Use and Privacy Policy." (*Id.* ¶ 9.) "Uber Terms of Use" and "Privacy Policy" were displayed in bright turquoise-blue text that contrasted with the other font colors to indicate that they were hyperlinks. (*Id.* ¶ 9, Ex. A.) When the user clicked the "Terms of Use" hyperlink, the relevant 2017 Terms then in effect would be displayed for the user. (*Id.* ¶ 9.) Plaintiff, like all users, was free to spend as much time as she wished reviewing the Terms of Use, including its Arbitration Provision. An account would not be created unless and until the user filled out required fields and clicked the "SIGN UP" button. (*Id.*) As such, Plaintiff could not have created her Uber account without agreeing to Uber's Terms of Use. (*Id.*)

> **B.**     **Uber's 2017 Terms Include an Arbitration Provision With a Delegation Clause and a Provision That Permits Uber to Update its Terms**

The Terms of Use in effect when Plaintiff signed up for an Uber account in 2018 contain an Arbitration Provision with a delegation clause and provisions permitting Uber to update its Terms of Use at any time. The very first page of the 2017 Terms included a single bolded paragraph reading, in all-capital letters:

> **"IMPORTANT: PLEASE REVIEW THE ARBITRATION AGREEMENT SET FORTH BELOW CAREFULLY, AS IT WILL REQUIRE YOU TO RESOLVE DISPUTES WITH UBER ON AN INDIVIDUAL BASIS THROUGH FINAL AND BINDING ARBITRATION. BY ENTERING THIS AGREEMENT, YOU EXPRESSLY ACKNOWLEDGE THAT YOU HAVE READ AND UNDERSTAND ALL OF THE TERMS OF THIS AGREEMENT AND HAVE TAKEN TIME TO CONSIDER THE CONSEQUENCES OF THIS IMPORTANT DECISION."**

(*Id.*, Ex. B at 1.)

On the next page, in a section clearly labeled "Arbitration Agreement," Uber again explained the Arbitration Provision in bold text:

> **"By agreeing to the Terms, you agree that you are required to resolve any claim that you may have against Uber on an**

4

> **individual basis in arbitration, as set forth in this Arbitration Agreement. This will preclude you from bringing any class, collective, or representative action against Uber, and also preclude you from participating in or recovering relief under any current or future class, collective, consolidated, or representative action brought against Uber by someone else."**

(*Id.*, Ex. B at 2.)

The 2017 Terms also included both a general change-in-terms provision, which permitted Uber to modify the terms and conditions at any time, and a more specific change provision that was applicable to the agreement to arbitrate.  (Fishman Decl., Ex. B at 1, 3.)

### C.    Uber Properly Updated its Terms of Use and Plaintiff Did Not Reject the Changes.

Pursuant to the parties' agreement, Uber updated its Terms of Use periodically, including in July 2021.[3]  (*Id.*, Exs. C-D.)  Uber notified users of the July 2021 Terms through a popup notification that appeared when the user opened the Uber App.  (Fishman Decl. ¶¶ 15-16, Ex. E.)  The popup notification stated: "We've updated our terms," and, in bigger text, "We encourage you to read our updated Terms in full."  (*Id.*, ¶ 16, Ex. E.)  The popup notification provided hyperlinks to both Uber's Terms of Use, including the Arbitration Provision, and Uber's Privacy Notice.  To proceed past the popup notification, the user was required to affirmatively check a box labeled "By checking the box, I have reviewed and agreed to the Terms of Use and

---

[3] The Arbitration Provisions contained in Uber's terms have remained largely unchanged from 2017 through 2021. Plaintiff's Complaint vaguely asserts that "[o]n multiple occasions, including in September 2021, before using the [Uber] service [Plaintiff] was quoted a price but was ultimately charged a higher price." (Compl. ¶ 9.)  Plaintiff, however, does not provide the dates of any such rides.  Assuming that Plaintiff's complaint is centered on a ride that took place in September 2021, the July 2021 Terms that were in effect at that time are the operative terms. In any event, all of the terms from 2018 through 2021, including the July 2021 Terms, contain nearly identical Arbitration Provisions with nearly identical delegation clauses.

Prior to the July 2021 Terms, Uber updated its terms of use in April 2021 ("the April 2021 Terms.).  (Fishman Decl. ¶ 13, Ex. C.)  The April 2021 Terms and July 2021 Terms both make clear that Uber could provide notice of the changes by updating the date at the top of the terms and instructed riders that "[i]f you do not agree to the amended Terms, you must stop accessing and using [Uber's] Services.").  (*Id.*, Ex. C at 1; *id.*, Ex. D at 2.)

acknowledge the Privacy Policy" and click "Confirm."  (*Id.* ¶ 17, Ex. E.)  A user was not permitted to proceed past the popup notification – and thus could not request a ride – without checking the checkbox and clicking Confirm.  (*Id.* ¶ 17.)   Plaintiff proceeded past the checkbox pop-up and continued to use the Uber App.  (*Id.* ¶ 18, Ex. F.)

> ### D.   Plaintiff Ignored The Arbitration Provisions and Filed Suit.

Despite her Arbitration Agreement with Uber, Plaintiff filed this lawsuit.  Her claims all stem from her allegations that she was overcharged—by an unspecified amount and on unspecified occasions—for rides that she arranged through the Uber App.  (Compl. ¶¶ 9, 17.) This is precisely the type of dispute encompassed by the parties' arbitration agreement.  (*See* Fishman Decl., Exs. B-D (noting that the parties' arbitration agreement covers any dispute relating to the Terms of Use and plaintiff's "access to or use of the Services at any time.").)

Moreover, this is one of <u>three</u> lawsuits that Plaintiff's Counsel has filed against Uber purportedly on behalf of riders alleging that they were overcharged.  In May 2020, Plaintiff's counsel filed a nearly identical lawsuit in the Superior Court of the County of San Francisco seeking to certify a California class of consumers who were allegedly charged more for rides with Uber than they were quoted upfront at the beginning of their ride.  (Vetesi Decl., Ex. B.) On October 17, 2020, Uber filed a Motion to Compel Arbitration and For a Stay of Proceedings Pending Arbitration, arguing that Uber's 2016 Terms of Use—substantially similar to the terms to which Plaintiff here assented—required arbitration of claims relating to alleged overcharges. In looking at terms nearly identical to those at issue in this case, the *Matthews* court ordered the case to arbitration. (*See id.*, Exs. C-D.)  And less than two months after filing this lawsuit, Plaintiff's counsel brought claims against Uber in the U.S. District Court for the Northern District of California, premised on the same factual allegations as in *Matthews* and in Plaintiff's Complaint in this matter.  (*See id.*, Ex. D.)

6

Plaintiff's counsel has no factual or legal basis for pursuing this case in this court.  This Court should reject Plaintiff's attempt to forum shop and order this case to arbitration.

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") creates a body of federal substantive law that governs in both state and federal courts.  *Southland Corp. v. Keating*, 465 U.S. 1, 11-12 (1984). The FAA reflects a liberal federal policy favoring arbitration, and requires that arbitration agreements be rigorously enforced.  *See Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1424 (2017) (courts required "to place arbitration agreements on an equal footing with all other contracts") (citation and quotation marks omitted); *Mortensen v. Bresnan Commc'ns, LLC*, 722 F.3d 1151, *1160 ("[T]he FAA's purpose is to give preference [instead of mere equality] to arbitration provisions.") (citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 343 (2011)). Thus, "courts must 'rigorously enforce' arbitration agreements according to their terms . . . .'" *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (emphasis and internal citations omitted.)

In determining whether claims are subject to arbitration, courts in this Circuit consider "(1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement."  *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011).  Because Uber and Plaintiff entered into a valid agreement to arbitrate, and the dispute comes within the scope of the arbitration agreement, this Court should grant Uber's Motion to Compel Arbitration.

**ARGUMENT**

## I.    PLAINTIFF MUST INDIVIDUALLY ARBITRATE HER CLAIMS.

### A.    Plaintiff Agreed To Be Bound by Uber's Terms, Which Govern Plaintiff's Claims.

When Plaintiff began using Uber's platform, she affirmatively agreed to Uber's 2017

Terms, which made clear that by agreeing, Plaintiff was "required to resolve any claim . . .

against Uber on an individual basis in arbitration . . . ."  (Fishman Decl., Ex. B at 2.)  The 2017

Terms clearly explained that any claims arising out of or relating to Uber's Terms or to

Plaintiff's access or use of Uber's platform would be adjudicated in an arbitration administered

by the American Arbitration Association.  (*Id.*)  Plaintiff continued to use the Uber App and on

November 3, 2021, just weeks before filing her Complaint, Plaintiff again expressly consented to

Uber's substantially-similar July 2021 Terms, which were displayed as a popup notification on

the Uber App[4].  (Fishman Decl. ¶¶ 10, 16-18, Exs. E-F.)

Even if Plaintiff had not affirmatively consented to the July 2021 Terms—and she did—

Courts applying New York law consistently have held that "customers accept revised terms of

their accounts by continuing to use their accounts after receiving the revised terms."  *Guan*, 236

F. Supp. 3d at 726 (quotation marks omitted) (collecting cases).[5]  As such, there can be no

---

[4] Given the broad Arbitration Provisions contained in all of Uber's Terms of Use, including in the July 2021 Terms, the July 2021 Terms govern this dispute.  *See e.g.*, *Plazza v. Airbnb, Inc.*, 289 F. Supp. 537, 551 (S.D.N.Y. 2018) (broadly worded arbitration clause applying to "any dispute, claim or controversy arising out of or relating to these Terms…" sufficient to refer the matter to arbitration).  And even if the Court has doubts regarding which of Uber's Terms are operative in this case, it should resolve those doubts in favor of arbitration.  As discussed below, all of Uber's Terms of Use, including the July 2021 Terms, delegate to the arbitrator "disputes relating to the interpretation, applicability, enforceability or formation of this Arbitration Agreement, including any claim that all or part of this Arbitration Agreement is void or voidable."  (Fishman Decl., Ex. B at 2; *id.*, Ex. C at 3; *id.*, Ex. D at 4.)

[5] Furthermore, any argument that Plaintiff was not on notice of Uber's Terms must fail.  *See, e.g.*, *Nicosia v. Amazon.com, Inc.*, No. 14 CV 4513 (SLT)(LB), 2017 WL 10111078, at *11 (E.D.N.Y. Aug. 18, 2017) (rejecting plaintiff's argument that he was not on notice of defendant's terms, where Plaintiff continued using defendant's platform and "was on notice, through his counsel, of [defendant's] arbitration provision . . . .").

dispute that Plaintiff agreed to be bound by Uber's Terms of Use, including the Arbitration

Provisions which remained largely unchanged from 2017 through the date that Plaintiff filed her

Complaint.

**B.      The FAA Applies To The Arbitration Provisions Contained in Uber's Terms.**

The FAA provides that "[a] written provision in . . . a contract evidencing a transaction

involving commerce to settle by arbitration a controversy thereafter arising out of such contract

or transaction shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law

or in equity for the revocation of any contract . . . ."  9 U.S.C. § 2.

The Arbitration Provisions contained in Uber's 2017 Terms and July 2021 Terms are

indisputably governed by the FAA.  First, both Arbitration Provisions state that the "parties

acknowledge that this Arbitration Agreement evidences a transaction involving interstate

commerce and that the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"), will govern its

interpretation and enforcement and proceedings pursuant thereto… It is the intent of the parties

that the FAA and AAA Rules shall preempt all state laws to the fullest extent permitted by law."

(Fishman Decl., Ex. B at 2; *id.*, Ex. D at 4.)  Where, as here, an arbitration agreement expressly

provides that the FAA governs, the FAA preempts application of state law, and the question of

the contract's validity is left to the arbitrator.  *See Buckeye Check Cashing, Inc. v. Cardegna*, 546

U.S. 440, 442-43 (2006).

Second, the FAA applies to agreements (like the ones at issue here) evidencing a

transaction involving interstate commerce.  *See* 9 U.S.C. §§ 1-2; *Allied-Bruce Terminix Cos. v.

Dobson*, 513 U.S. 265, 273-77 (1995) (interpreting the FAA's "involving commerce" provision

as broadly as the phrase "affecting commerce" and holding that the FAA should be applied with

the full reach of Congress' powers under the Commerce Clause).  As the United States Supreme

Court has explained, the individual transaction at issue need not have "any specific effect upon interstate commerce" to meet this threshold requirement. *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56-57 (2003). Instead, it is sufficient that the "general practice . . . bear[s] on interstate commerce in a substantial way." *Id.* at 57.

Such is the case here. After Plaintiff agreed to Uber's 2017 Terms, Uber authorized her to use the Uber App. (Fishman Decl. ¶¶ 6, 9.) Courts have repeatedly recognized that where, as here, a ridesharing app enables riders to submit requests for rides that are transmitted to drivers using the Internet in hundreds of cities throughout the United States (including New York City) the "involving commerce" requirement has been met. (*Id.* ¶ 3.) *See Camilo v. Lyft, Inc.*, 384 F. Supp. 3d 435, 440 (S.D.N.Y. 2019) (Carter, J.) (FAA governed an arbitration agreement entered into by clicking "I ACCEPT" in order to continue using a mobile app); *Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 987-88 (N.D. Cal. 2017) ("Because Uber's terms and conditions are 'a contract evidencing a transaction involving commerce,' they are subject to the Federal Arbitration Act . . . ."). Accordingly, the FAA—with its "liberal federal policy *favoring* arbitration"—controls in this case. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (emphasis added).

C.    **New York Law Governs Any Dispute Concerning The Enforceability Or Scope Of The Arbitration Provision Contained in Uber's Terms.**

New York law applies to any threshold "gateway" disputes about the validity or scope of the Arbitration Provisions. Where, as here, an arbitration agreement specifically states that it is governed by the FAA and is silent with respect to state law, courts in the Second Circuit "appl[y] the choice-of-law rules of the state in which [they are] located—in this case, New York—" to determine the validity of the contract. *See Klein v. ATP Flight Sch., LLP*, No. 14-CV-1522 JFB GRB, 2014 WL 3013294, at *5 (E.D.N.Y. July 3, 2014). "On substantive issues of law such as

contract formation, New York courts give controlling effect to the law of the jurisdiction which has the greatest concern with, or interest in, the specific issue raised in the litigation." *Totalplan Corp. of Am. v. Colborne*, 14 F.3d 824, 832 (2d Cir. 1994) (citation and quotation marks omitted).

Here, New York has the greatest concern with its own residents asserting claims that involve events that allegedly took place in New York state. *See, e.g.*, *Micheli & Shel, LLC v. Grubhub Inc.*, No. 21-CV-4995 (JMF), 2022 WL 622828, at *4 n.4 (S.D.N.Y. Mar. 1, 2022) (applying New York law where Plaintiff was located in New York and entered the contracts at issue in New York); *Guan*, 236 F. Supp. 3d at 715 (applying New York law to New York residents). Accordingly, New York law applies to any determination of the validity of the Arbitration Provision and whether it governs Plaintiffs' claims.

> **D.      Under The FAA And New York Law, the Arbitration Provision Contained in Uber's Terms of Use Is Valid And Must Be Enforced.**
>
>> **1.      The Parties' Agreement requires the arbitrator to decide all issues of arbitrability.**

Any dispute concerning the validity or applicability of the Arbitration Provision contained in Uber's 2017 Terms (which were in effect when Plaintiff signed up for the Uber App) or Uber's July 2021 Terms (which were in effect when Plaintiff filed this Complaint and allegedly took the September 2021 ride mentioned in the Complaint), or any terms that may have gone into effect in between, must be delegated to and decided by an arbitrator.

Because arbitration is a matter of contract, the FAA requires that courts compel arbitration "in accordance with the terms of the agreement" upon the motion of either party to the agreement. 9 U.S.C. § 4; *see also Am. Express Co.*, 570 U.S. at 233 (courts must "rigorously enforce arbitration agreements according to their terms") (internal citations and quotations marks omitted). Accordingly, a court facing a motion to compel arbitration is limited to assessing two

11

"gateway" questions in determining whether a dispute is arbitrable: "(1) whether there exists a valid agreement to arbitrate at all under the contract in question . . . and if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement."  *See Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp.*, 246 F.3d 219, 226 (2d Cir. 2001) (quotation marks omitted); *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1198 (2d Cir. 1996) (the role of the court is largely "limited to determining . . . whether a valid agreement or obligation to arbitrate exists").

"The Supreme Court has long recognized that so-called 'gateway' issues of arbitrability may be delegated to arbitrators rather than district courts."  *Man Fong Wong v. 1st Disc. Brokerage, Inc.*, No. 10 CV 1487 ENV, 2011 WL 1298857, at *2 (E.D.N.Y. Jan. 6, 2011) (*citing Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70 (2010) ("An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other")), report and recommendation adopted, No. 10-CV-1487 ENV CLP, 2011 WL 1235756 (E.D.N.Y. Mar. 31, 2011).  And courts enforce contractual provisions delegating a determination of any gateway issues to the arbitrator "if there is *clear and unmistakable evidence* from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator."  *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir. 2005) (emphasis in the original, quotation marks omitted).

Uber's 2017 Terms and July 2021 Terms contain Arbitration Provisions with delegation clauses providing clearly and unmistakably that any gateway issues of arbitrability must be decided by the arbitrator.  (*See* Fishman Decl., Ex. B at 2; *id.*, Ex. D at 4.)  For example, both of the Arbitration Provisions explicitly govern "disputes relating to the interpretation, applicability,

enforceability or formation of this Arbitration Agreement, including any claim that all or part of this Arbitration Agreement is void or voidable." (*Id.*, Ex. B at 2; *id.*, Ex. D at 4.)  In their next sentence, both of the Arbitration Provisions make delegation even more explicit: "The Arbitrator shall also be responsible for determining all threshold arbitrability issues, including issues relating to whether the Terms are [] unconscionable or illusory and any defense to arbitration, including waiver, delay, laches, or estoppel." (*Id.*, Ex. B at 2; *id.*, Ex. D at 4.)  Further, both of the Arbitration Provisions incorporate by reference the AAA's Consumer Arbitration Rules, which empower the arbitrator to decide issues of arbitrability.  (*See id*., Ex. B at 2; *id.*, Ex. D at 4.)

Both the Second Circuit and the New York Court of Appeals have found similar delegation clauses to be valid and enforceable.  *See PaineWebber*, 81 F.3d at 1199 ("the parties[] inten[ded] to arbitrate all issues, including arbitrability"); *Monarch Consulting, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 26 N.Y.3d 659, 676 (N.Y. 2016) (delegation clause stating that the arbitrators "have exclusive jurisdiction over the entire matter in dispute, including any question as to its arbitrability" was "valid because the parties 'clearly and unmistakably' agreed to arbitrate arbitrability") (internal citations omitted).

In fact, this Court has already examined and upheld a similar delegation clause in another of Uber's arbitration agreements.  In *Aleksanian*, this Court granted Uber's Motion to Compel Arbitration where the arbitration agreement with drivers similarly delegated to the arbitrator all "disputes arising out of or related to this Agreement and disputes arising out of or related to

[Plaintiffs'] relationship with Uber"—language that is nearly identical to the delegation

provisions contained in Uber's 2017 Terms and July 2021 Terms.[6] 524 F. Supp. 3d at 263-64.

Other courts have come to similar conclusions regarding the delegation clause in Uber's

similar Arbitration Provisions.  *See, e.g.*, Order Granting Motion to Compel, *Feld v. Uber Techs.,*

*Inc.*, No. 19STCV26766 (Cal. Super. Ct., L.A. Cty., Apr. 17, 2020) (attached as Ex. A to Vetesti

Decl.) (delegation clause clearly and unmistakably delegates the gateway issues to the

arbitrator); Vetesi Decl., Ex. C (same, in a class action lawsuit *brought by Plaintiff's counsel* on

the same issue of alleged overcharges[7]); *Guan*, 236 F. Supp. 3d at 728 (same); *Peng v. Uber*

*Techs., Inc.*, 237 F. Supp. 3d 36, 53 (E.D.N.Y. 2017) (same); *Sena v. Uber Techs. Inc*, No. CV-

15-02418-PHX-DLR, 2016 WL 1376445, at *4 (D. Ariz. Apr. 7, 2016) (same); *Gunn v. Uber*

*Techs., Inc.*, No. 16-CV-1668, 2017 WL 386816, at *7 (S.D. Ind. Jan. 27, 2017) (same); *Lee v.*

*Uber Techs., Inc.*, 208 F. Supp. 3d 886, 891 (N.D. Ill. 2016) (same); *Suarez v. Uber Techs., Inc.*,

No. 8:16-CV-166, 2016 WL 2348706, at *4 (M.D. Fla. May 4, 2016) (same); *Varon v. Uber*

*Techs., Inc.*, No. 15-CV-3650, 2016 WL 1752835, at *6 (D. Md. May 3, 2016) (same).  This

Court should reach the same result.

---

[6] While plaintiffs in *Aleksanian* were drivers, not riders, the distinction is immaterial here.  In *Aleksanian*, as here, the relevant contract between the plaintiff and Uber contained a valid arbitration agreement with a delegation clause. *Aleksanian*, 524 F. Supp. 3d at 264.

[7] That the *Matthews* court held that Uber's delegation clause was valid and enforceable in California should leave little doubt as to the same Arbitration Provision's validity in this forum.  In *Matthews*, Plaintiff's counsel argued that Uber's Arbitration Provision was invalid under California law as set forth in *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017), because the class action waiver prohibited an arbitrator from awarding public injunctive relief.  The Arbitration Provision does not prohibit public injunctive relief.  More importantly, there is no Second Circuit or New York analog to *McGill*.  Courts in the Second Circuit have consistently held that class action waivers are enforceable and do not make an arbitration agreement unconscionable.  *See e.g.*, *Sutherland v. Ernst & Young LLP*, 726 F.3d 290, 296 (2d Cir. 2013) (holding that class action waivers must be enforced absent a "contrary congressional command"); *Horton v. Dow Jones & Co., Inc.*, 804 F. App'x 81, 84 (2d Cir. 2020) (summary order) ("[A] contractual proscription against class actions is neither unconscionable nor violative of public policy.").

**2.** **Plaintiff's claims are subject to arbitration because the "gateway" issues have been satisfied.**

Even if the Court does not enforce the delegation clauses in the parties' arbitration agreement—and it should—Plaintiff's claims are nevertheless subject to arbitration because: (1) the Arbitration Provisions contained in all of Uber's Terms of Use, including the July 2021 Terms, are valid and enforceable, and (2) Plaintiff's claims fall squarely within the scope of those Provisions. *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d at 128.

**a.** **Plaintiff entered into valid Arbitration Agreement(s).**

Under New York law, the touchstone of a binding contract is mutual manifestation of assent to the terms. *See Starke v. Gilt Groupe, Inc.*, No. 13 Civ. 5497(LLS), 2014 WL 1652225 (S.D.N.Y. Apr. 24, 2014). This principle applies to digital contracts, such as agreements made over the Internet. *Hines v. Overstock.com, Inc.*, 380 Fed. Appx. 22, 25 (2d Cir. 2010) ("[I]n the context of agreements made over the internet, New York courts find that binding contracts are made when the user takes some action demonstrating that they have at least constructive knowledge of the terms of the agreement, from which knowledge a court can infer acceptance."). These conditions have been satisfied here.

First, Plaintiff took the affirmative step of clicking on the "SIGN UP" button after viewing Uber's 2017 Terms when signing up for an Uber account, which is sufficient to demonstrate express consent to be bound by those agreements. (Fishman Decl. ¶¶ 8-9); *see O'Callaghan v. Uber Corp. of Cal.*, No. 17 Civ. 2094 (ER), 2018 WL 3302179, at *7 (S.D.N.Y. July 3, 2018) ("no genuine dispute" that the parties were bound by substantially similar arbitration provisions to the ones at issue here, where "Uber's electronic records show that [plaintiff] assented to four updated agreements, each of which contains the arbitration provision" by clicking "YES I AGREE."); *Whitt v. Prosper Funding LLC*, No. 15-cv-136, 2015 WL

15

4254062, at *4 (S.D.N.Y. July 14, 2015) (one way to establish constructive knowledge sufficient to constitute assent is to "affirmatively click a box on [a] website acknowledging awareness of and agreement to the terms of [a contract] before . . . [being] allowed to proceed with further utilization of the website"); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 841 (S.D.N.Y. 2012) (user's affirmative step of clicking "Sign-Up" button agreeing to hyperlinked Terms of Service was sufficient to demonstrate assent); *Starke*, 2014 WL 1652225, at *3 (upholding an agreement to arbitrate where plaintiff clicked "Shop Now," was informed that by doing so, he "agree[d] to the Terms of Membership," and was given an opportunity to click to review the terms).

Second, all of Uber's relevant Terms of Use, including the 2017 Terms and July 2021 Terms, provide clear notice of the relevant Arbitration Provisions.  In fact, the 2017 Terms that Plaintiff had an opportunity to review when signing up for an Uber account explained the Arbitration Provision in bolded, all-capital font on the front page of the documents, as well as in bolded font in the section containing the Arbitration Provision.  (Fishman Decl., Ex. B at 1.)  The July 2021 Terms similarly included a bolded, all-capital notice regarding the parties' arbitration agreement at the top of the second page.  (*Id.*, Ex. D at 2.)

Finally, Plaintiff did not stop using the Uber App after signing up.  (*Id.* ¶¶ 10, 19.)  Thus, Plaintiff is bound by the terms of the Arbitration Provisions in all applicable versions of the terms.

**b.    Plaintiff's claims fall squarely within the scope of Uber's Terms of Use.**

The Arbitration Provisions contained in all Uber's Terms of Use, including the July 2021 Terms, apply to any dispute, claim or controversy arising out of or relating to (a) "these Terms or the existence, breach, termination, enforcement, interpretation or validity thereof," or (b) "access to or use of [Uber's] Services at any time.  (*See* Fishman Decl., Ex. B at 2; *id.*, Ex. D at 3.)

16

Here, there can be no dispute that Plaintiff's Complaint falls directly within the scope of the Arbitration Provisions.  First, Plaintiff asserts, based on her *use* of Uber's ridesharing services, that she suffered injury when Uber allegedly quoted Plaintiff one price before she requested a ride, but ultimately charged her a higher price.  (Compl. ¶ 9.)  Furthermore, because all of Uber's Terms of Use, including the 2017 Terms and July 2021 Terms, discuss account charges in depth, Plaintiff's Complaint regarding alleged overcharges is a dispute *relating to* Uber's Terms.  (*See, e.g.*, Fishman Decl., Ex. B at 7 ("You understand that use of the Services may result in charges to you for the services or goods you receive . . . ."); *id.*, Ex. D at 11 (same).  In addition, Uber's July 2021 Terms, which govern the one ride Plaintiff references in the Complaint, lay out a procedure for correcting any potential overcharges: "If you think a correction should be made to any Charge you incurred, you must let Uber know in writing within 30 days after the Charge took place or Uber will have no further responsibility and you waive your right to later dispute the amounts charged."  (*Id.*, Ex. D at 12.)  Because Plaintiff waited longer than 30 days to assert her claim, Plaintiff's Complaint inherently implicates Uber's July 2021 Terms.

But even if Plaintiff's Complaint did not expressly involve Uber's terms or its services— and it does—Plaintiff's claims against Uber would still be covered by the broad Arbitration Provisions.  (*See, e.g.*, Fishman Decl., Ex. B at 2 ("**By agreeing to the Terms, you agree that you are required to resolve any claim that you may have against Uber on an individual basis in arbitration . . . .**"); *id.*, Ex. D at 2 (same).)  *Spinelli v. Nat'l Football League*, 96 F. Supp. 3d 81, 100 (S.D.N.Y. 2015) ("Clauses requiring arbitration of disputes 'arising out of or in connection with' underlying contracts are considered 'broad' arbitration clauses.  Indeed, an arbitration clause covering 'any claim or controversy arising out of or relating to' an agreement

17

is 'the paradigm of a broad clause'") (citations omitted); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) ("any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration").

### E.     Plaintiff Must Arbitrate Her Claims on an Individual Basis.

The Arbitration Provisions contained in all of Uber's Terms of Use, including the 2017 Terms and July 2021 Terms, do not permit class actions or class arbitration.  (*See* Fishman Decl., Ex. B at 2; *id.*, Ex. D at 2-3.)  The United States Supreme Court has made clear that class action waivers in arbitration agreements are enforceable.  *See Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1619 (2018) ("Congress has instructed federal courts to enforce arbitration agreements according to their terms — including terms providing for individualized proceedings."); *DIRECTV, Inc. v. Imburgia*, 577 U.S. 47, 58-59 (2015) (the FAA preempts attempt to invalidate arbitration agreement with class action waiver under California law).  Further, New York courts have routinely enforced class action waivers in arbitration agreements.  *See, e.g.*, *Sutherland*, 726 F.3d at 296 (class action waivers must be enforced absent a "contrary congressional command"); *Micheli & Shel, LLC v. Grubhub Inc.*, No. 21-CV-4995 (JMF), 2022 WL 622828 (S.D.N.Y. Mar. 1, 2022) (upholding class action waiver in putative class action alleging claims relating to charges on Uber Eats and other platforms).

Accordingly, this Court should enforce the class action waivers contained in all of Uber's relevant Terms of Use, including the 2017 Terms and July 2021 Terms.

## II.     THIS ACTION SHOULD BE DISMISSED OR STAYED PENDING THE COMPLETION OF INDIVIDUAL ARBITRATION.

Courts are required to "rigorously enforce agreements to arbitrate."  *Dean Witter Reynolds, Inc v. Byrd*, 470 U.S. 213, 221 (1985).  Furthermore, "Section 4 of the Federal Arbitration Act . . . requires courts to compel arbitration in accordance with the terms of an

arbitration agreement, upon the motion of either party to the agreement, provided that there is no issue regarding its creation." *Merrick v. UnitedHealth Grp. Inc.*, 127 F. Supp. 3d 138, 146 (S.D.N.Y. 2015).  Here, Plaintiff entered into a valid and binding arbitration agreement with Uber, and the terms of the Arbitration Provisions encompass Plaintiff's claims.  Binding precedent compels the Court to direct Plaintiff to resolve this dispute in individual arbitration and either dismiss or stay this action.  *Guyden v. Aetna, Inc.*, 544 F.3d 376, 382 (2d Cir. 2008) ("The FAA embodies the 'liberal federal policy favoring arbitration agreements' and 'establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'") (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25); *Aleksanian*, 524 F. Supp. 3d at 263-64 (granting motion to compel arbitration and dismissing case).

## CONCLUSION

For the foregoing reasons, Uber respectfully requests that the Court grant its motion to compel arbitration and dismiss the case, or in the alternative, stay the case pending arbitration.

19

Dated:  March 25, 2022                            MORRISON & FOERSTER LLP

                                        */s/ Adam J. Hunt*
                                        Adam J. Hunt
                                        MORRISON & FOERSTER LLP
                                        250 West 55th Street
                                        New York, New York 10019
                                        Tel: (212) 468-8000
                                        AHunt@mofo.com

                                        Claudia M. Vetesi
                                        Tiffany Cheung
                                        MORRISON & FOERSTER LLP
                                        425 Market Street
                                        San Francisco, CA 94105
                                        Tel: (415) 268-7000
                                        CVetesi@mofo.com
                                        TCheung@mofo.com

                                        *Attorneys for Defendant*
                                        *Uber Technologies, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 25, 2022, I caused a copy of the foregoing to be served via CM/ECF on all counsel of record.


By: _/s/ Adam J. Hunt_____
Adam J. Hunt